J-S11038-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES CONRAD PRUITT, | : | |
| | : | |
| Appellant | : | No. 1249 MDA 2014 |

Appeal from the PCRA Order entered on June 24, 2014
in the Court of Common Pleas of Lancaster County,
Criminal Division, No(s):  CP-36-CR-0000609-2011;
CP-36-CR-0000612-2011; CP-36-CR-0000631-2011

BEFORE:  PANELLA, OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED FEBRUARY 19, 2015**

James Conrad Pruitt ("Pruitt") appeals from the Order denying his first

Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").

**See** 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The PCRA court set forth the relevant factual and procedural history in

its Opinion, which we incorporate herein by reference.  **See** PCRA Court

Opinion, 9/5/14, at 1-3 (unnumbered).[1]

In August 2013, Pruitt's PCRA counsel filed an Amended PCRA Petition,

after which the PCRA court conducted a hearing.  Following the hearing, the

PCRA court entered an Order, on June 24, 2014, denying the PCRA Petition.

---

[1] We will hereinafter refer to Pruitt's counsel who represented him during the guilty plea and pretrial proceedings, Andrew E. Spade, Esquire, as "trial counsel" or "Attorney Spade."

In response, Pruitt timely filed a Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of Errors Complained of on Appeal.

On appeal, Pruitt presents the following issue for our review: "Whether the [PCRA] court [] erred in denying post-conviction relief where trial counsel's failure to seek suppression of [Pruitt's] coerced 'confession' induced him to plead guilty?"  Brief for Appellant at 4.

The applicable standards of review regarding the denial of a PCRA petition and ineffectiveness claims are as follows:

> Our standard of review of a PCRA court's denial of a petition for post[-]conviction relief is well-settled: We must examine whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error.  The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.
>
> * * *
>
> It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.  The PCRA court may deny an ineffectiveness claim if the petitioner's evidence fails to meet a single one of these prongs.  Moreover, a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness.

***Commonwealth v. Franklin***, 990 A.2d 795, 797 (Pa. Super. 2010) (citations omitted).

> When an appellant pleads guilty to the charges against him or her, the grounds for appeal are limited.

It is well settled that, where a guilty plea has been entered, all grounds of appeal are waived other than challenges to the voluntariness of the plea and the jurisdiction of the sentencing court. Thus[,] allegations of ineffective assistance of counsel in connection with entry of the guilty plea will serve as a basis for relief only if the ineffectiveness caused appellant to enter an involuntary or unknowing plea.

*Commonwealth v. Boyd*, 835 A.2d 812, 815 (Pa. Super. 2003) (citation omitted); *see also Commonwealth v. Watson*, 835 A.2d 786, 795 (Pa. Super. 2003) (same).

Pruitt argues that trial counsel was ineffective for allowing Pruitt to plead guilty and for failing to file a motion to suppress his inculpatory statement given to Quarryville Police Chief Kenneth Work ("Chief Work"). *See id.* at 9-10.[2] Specifically, Pruitt contends as follows:

The PCRA hearing revealed that trial counsel did not pursue a meritorious suppression issue arising from the obvious facial irregularities in the dates and times written by [Chief Work] on the *Miranda*[3] waiver and statement. If the *Miranda* warnings were given after the oral interview was conducted or the written "Q & A" prepared, grounds for suppressing [Pruitt's] statement existed, if [Pruitt was] in custody at the time of the interrogation.

*Id.* at 9 (footnote added); *see also id.* (asserting that "[i]t is at least arguable that [Pruitt] was subjected to a custodial interrogation without the benefit of *Miranda* [warnings] …."). Moreover, according to Pruitt, he "may

---

[2] Pruitt clarifies that his claim is one of ineffective assistance of counsel, not a claim of an unlawfully-induced guilty plea under 42 Pa.C.S.A. § 9543(a)(2)(iii). Brief for Appellant at 8.

[3] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

- 3 -

have been 'adamant that he did not want to go to trial and wanted to plead guilty,' as [trial] counsel testified (N[.]T[., 11/6/13], p. 21), but the initial inclination of the lay client cannot excuse [trial] counsel from doing his job and investigating every reasonable theory of defense." Brief for Appellant at 9-10.

In its Pa.R.A.P. 1925(a) Opinion, the PCRA court discussed the applicable law, thoroughly addressed Pruitt's ineffectiveness claim, and determined that he had not met any of the prongs of the ineffectiveness test. **See** PCRA Court Opinion, 9/5/14, at 4-8 (unnumbered). Our review confirms that the PCRA court's analysis is supported by the record and the law, and we therefore affirm on this basis in rejecting Pruitt's sole issue on appeal. **See id.**[4]

Because we conclude that the PCRA court neither abused its discretion nor committed an error of law by denying Pruitt's PCRA Petition, we affirm the Order on appeal.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/2015

---

[4] By pleading guilty, Pruitt waived all issues concerning the merits of a pre-trial motion to suppress. **See Boyd, supra**.

Opinion No. 33-2014

September 5, 2014

Copies To:

Russell R. Pugh, Esquire

Amber L. Czerniakowski, Esquire

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY,

PENNSYLVANIA CRIMINAL DIVISION

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : |
| | : |
| | : No: CP-36-CR 609-2001 |
| v. | : |
| | : |
| JAMES CONRAD PRUITT | : |
| | : |

LANCASTER COUNTY, PA
2014 SEP -5 PM 3: 48
CLERK OF COURTS

## OPINION

BY MADENSPACHER, J.

Defendant, James Pruitt, was charged through multiple informations with 68 counts of sexual abuse. The Victims in this case were Defendant's three minor step-daughters. Over a period spanning 6 years, the Victims endured countless instances of violence and sexual abuse at the hands of the Defendant. On March 21, 2012, in an effort to spare his family from trial, the

Defendant plead guilty to all 68 counts, spread over three criminal informations.[1] Following his guilty plea, the Defendant was sentenced to a period of incarceration not less than 60 nor more than 120 years. No direct appeal was filed.

Defendant filed a *pro se* PCRA petition on June 14, 2013. Russell Pugh, Esquire was appointed to represent the Defendant, and a hearing was held on November 6, 2013.

Factual History:

In early December of 2010, Quarryville Police Chief, Kenneth Work, was notified of a potential sexual abuse case involving the Defendant. (Notes of Testimony from PCRA Vol. 2 Pg. 31) (Hereinafter NT PCRA Vol. 2). Acting on this information Chief Work called the Defendant and arranged a time and place to conduct an interview. (NT PCRA Vol. 2. Pg. 31). The interview was held on December 17, 2010, at the Quarryville Police Station, at 08:30 AM. The Defendant drove his own car to the police station. (NT PCRA Vol. 2 Pg. 31). The interview was conducted in Chief Work's office with the door left open. At no time during the interview was Defendant restrained, or told he was not free to leave. (NT PCRA Vol. 1 Pg. 12).

During the interview, Defendant gave a confession in the form of a typed question and answer statement. (Def. Ex. 2). Defendant's confession detailed the repeated sexual assaults he committed against his three step-daughters. In the heading of Defendant's statement, Chief Work noted the "time taken" as 08:35 hours. (Def. Ex. 2). Affixed to the front of the statement was a "Miranda Warnings and Waiver" sheet. (Def. Ex. 1). Chief Work noted the time Defendant was advised of his rights on that form as 08:35 hours. (NT PCRA Vol. 1 Pg. 12).

---

[1] Criminal Information No.'s: 609;612;631-2011

The issue regarding the *Miranda* form is not whether Defendant knowingly signed it; but at what point during the interview process it was signed. (NT PCRA Vol. 1 Pg.7-8). Defendant contends that upon his arrival, Chief Work began an informal interview asking questions and taking hand-written notes. (NT PCRA Vol. 1 Pg.5-6). It was only after this interview, and prior to the typed statement, that Defendant claims he was advised of his *Miranda* Rights. Thus, Defendant's petition contends that the time written on both the *Miranda* form and the typed statement cannot be accurate. (Def. Ex. 2).

Chief Work recalls the events differently. While testifying at the PCRA hearing, Chief Work stated that the first thing he did was advise the Defendant of his *Miranda* Rights. (NT PCRA Vol. 2 Pg. 32). Chief Work stated that he first explained the rights and the form to the Defendant while simultaneously filling in the time and background data on the form. *Id.* Only after the Defendant agreed to waive his *Miranda* rights did Chief Work begin the informal, and subsequent typed question and answer statement. *Id.*

When asked why he wrote 08:35 on the subsequent question and answer statement, Chief Work stated that in his 42 years as an officer, "That's how I've always done it," and that he treated the *Miranda* form and subsequent statements as a "continuing series of events." (NT PCRA Vol. 2 Pg. 33).

Defendant now contends that trial counsel, Andrew E. Spade, Esq., was ineffective in that he failed to note the timing discrepancies between the waiver form and Defendant's statement. Further, that Attorney Spade should have moved to suppress Defendant's statements based on the perceived inadmissible confession. The instant petition was filed.

## Legal Argument:

Defendant brings his claim for relief pursuant 42 Pa. CS. § 9543 (a)(2)(ii) ineffective assistance of counsel. For Defendant to make out a claim of ineffective assistance of counsel, he must demonstrate the following by a preponderance of the evidence: (1) that the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his action or inaction; and (3) that, but for the omission of counsel, there is a reasonable probability that the outcome of the proceeding would have been different. *Commonwealth v. Wallace*, 724 A.2d 916, 921 (Pa. 1999).

## Claim of Arguable Merit:

The relative merit of Defendant's ineffective assistance claim hinges on whether or not Chief Work violated Defendant's rights in procuring his confession. It is this Court's opinion that: 1) Defendant was not subject to a custodial interrogation such that a *Miranda* waiver was required. And 2) Notwithstanding Defendant's status during the interview, the Defendant was adequately warned and agreed to waive his rights.

The warnings articulated by *Miranda v. Arizona*, 86 S.Ct. 1602 (1966) become mandatory whenever one is subjected to a custodial interrogation. *Commonwealth v. Baker*, 963 A.2d 495, 500 (Pa. Super. 2008). Whether a person is "in custody" for purposes of *Miranda* is judged by a totality of the circumstances. *Id*. The outcome depends on whether the person is physically [deprived] of his freedom in any significant way; or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation. *Id*. at 501.

The circumstances surrounding Defendant's confession show no such deprivation. Defendant voluntarily met with Chief Work at the station. (NT PCRA Vol.2 Pg.31). He was free to leave at any time, and was not threatened or coerced into speaking with Chief Work. (NT PCRA Vol. 1 Pg. 11). The interview was conducted in Chief Work's office with the door open.(NT PCRA Vol.1 Pg. 18). At the conclusion of the interview, Defendant was able to walk out the front door and return home, despite the content of his confession. (NT PCRA Vol. 1. Pg. 19). It was not until days later that the Defendant was placed into custody and charged with the crimes alleged in the informations. *Id.*

None of the factors supporting a custodial interrogation were present in Defendant's interview. Accordingly, even if Chief Work had not obtained a *Miranda* waiver from the Defendant, his confession would not have been suppressed.

Despite being under no obligation to do so, Chief Work advised the Defendant of his rights, and obtained a waiver before conducting the interview. As Chief Work laid out in his testimony; it was his common practice to put the same time [08:35 hours] on both the *Miranda* waiver, and the statement itself. (NT PCRA Vol. 2 Pg. 32). Chief Work had a work habit of placing the same time on both documents because he felt they were all part of the same "series of events." (NT PCRA Vol. 2. Pg. 33). Despite this, Defendant claims that because the two documents have the same time stamp he is deserving of a basis for appeal. The dialogue from the statement itself however contradicts Defendant's claim:

"Question: Mr. Pruitt, you have been advised of your rights and stated that you understood them, is that correct?

Answer: That's Correct.

Question: You have made certain oral admissions to me here today and I would like to reduce those statements to typed form. Is that okay?

Answer: That's fine sir." (Def. Ex. 2).

The excerpt from the statement above shows the natural progression of the interview, consistent with Chief Work's description: First; Defendant was advised of *Miranda* rights. Next; an oral interview was conducted. Last; a typed statement based on the contents of the oral interview was drafted. After the final statement was drafted and printed the Defendant was given the opportunity to look over the statement in its entirety. (NT PCRA Vol. 1 Pg. 12). Defendant had the opportunity, at that time, to note any discrepancies he had with either the time or the content of the statement. *Id.* Instead, Defendant signed his name across each page of the statement, in essence vouching for the veracity of the document as a whole.

Accordingly, Defendant's motion to suppress would likely be denied, making Defendant's PCRA claim meritless.

## Filing of Motion Would not Further Defendant's Strategic Goals:

In evaluating the second prong, Defendant must show that counsel lacked any reasonable strategy to support his action/ inaction. *Commonwealth v. Wallace, supra.* Defense counsel is afforded broad discretion in determining the tactics and strategy of the defense. *Commonwealth v. Fowler*, 670 A.2d 153 (Pa. Super. 1996). The applicable test in weighing counsel's strategy is not whether alternative strategies were "more reasonable," but whether counsel's decision had any reasonable basis to advance the interests of the defendant. *Commonwealth v. Baker*, 880 A.2d 654, 656 (Pa. Super. Ct. 2005).

Both the Defendant and Attorney Spade noted that throughout the representation, "Defendant was adamant regarding his desire to plead guilty." (NT PCRA Vol 1. Pg. 21-2). The Defendant made it known that his wish was based on a desire to spare his family the misfortunes of trial. (NT PCRA Vol. 1 Pg. 15, 21-2). Upon learning the Defendant's objectives, Attorney Spade turned his attention towards pursuing a negotiated plea agreement with the Commonwealth. (NT PCRA Vol. 1 Pg. 22). While suppression of Defendant's confession is certainly an acceptable defense strategy, Attorney Spade knew that the chances of success on such a motion was a remote possibility. Accordingly, Attorney Spade focused his attention elsewhere on strategies more in line with the goals professed by his client. Had Attorney Spade sought suppression of Defendant's statement the likely outcome would have pushed down a path toward trial. The exact outcome Defendant was adamant he wished to avoid. Accordingly, Attorney Spade's decision to focus on securing a plea agreement and mitigate sentencing was a reasonable tactic supported by Defendant's own personal interests.

## No Reasonable Probability the Outcome Would Differ:

Even if Defendant is able to meet the first two prongs under an ineffective assistance claim, Defendant still must show that the actions of trial counsel resulted in actual prejudice to the Defendant. *Commonwealth v. Kimball*, 724 A.2d 326,333 (Pa. 1999.) The "prejudice prong" is imperative in Defendant's prayer for relief. If the Defendant fails to establish a resulting prejudice, his claim will fail regardless of the first two requirements. *Commonwealth v. Neal*, 713 A.2d 657 (Pa. Super. 1998). A defendant establishes resulting prejudice where he can show, but for the actions or inactions of defense counsel, there is a reasonable probability that the outcome of the proceeding would have been different. *Kimball*, 724 A.2d at 333.

Assuming arguendo that Defendant's claim survived the first two hurdles. The resulting prejudice prong is an insurmountable requirement for the Defendant. Even without Defendant's confession, the Commonwealth had ample evidence of Defendant's crimes in the form of victim testimony. Thus, trial counsel's proposed failure in not suppressing Defendant's statement had no prejudicial effect on the outcome of the case. The probability that Defendant would have been convicted based on the remaining evidence was still overwhelming

Accordingly, for the reasons stated above Defendant's petition fails to state a meritorious claim for ineffective assistance of counsel pursuant 42 Pa. CS. § 9543 (a)(2)(ii) and his PCRA petition was properly DENIED.